IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TEMEKIA V. ARMOUR,

       Plaintiff,

   v.

CENTURY COMMUNITIES, INC.,
and MICHAEL STONE,

       Defendants.

CIVIL ACTION FILE NO.

1:16-CV-1647-TWT-JFK

## **FINAL REPORT AND RECOMMENDATION**

Plaintiff Temekia V. Armour filed the above-styled employment discrimination action against Defendants Century Communities, Inc., and Michael Stone on May 23, 2016. [Doc. 1]. Plaintiff alleges that Defendants terminated her employment on the basis of her race and color in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* [Doc. 1, Counts I, II]. Defendant Century Communities, Inc., has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's claims based upon the pleadings, statements of material facts, exhibits, and discovery materials submitted to the court. [Doc. 27].

## I.    Defendant Michael Stone

A plaintiff is responsible for serving a defendant with summons and the complaint within 90 days of the complaint being filed.  Fed. R. Civ. P. 4(c)(1) and 4(m) (as amended 2015).  Although Plaintiff Armour named Michael Stone as a Defendant in this action, Plaintiff never served him.  Plaintiff mailed Mr. Stone a request for waiver of service more than a year and a half ago, on May 23, 2016, but he never executed the waiver of service.  [Doc. 3].  In her response to Defendant's summary judgment motion, Plaintiff informed the court that she "cares not whether Defendant Stone remains a party, as long as his employer, Century Community, Inc. [sic] remains in this action." [Doc. 31 at 2 n.1].  The undersigned, therefore, finds that Plaintiff has abandoned her claims against individual Defendant Michael Stone.

## II.   Facts

When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." Comer v. City of Palm Bay, Florida, 265 F.3d 1186, 1192 (11th Cir. 2001).  However, mere conclusions and unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment.

AO 72A
(Rev.8/82)

See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).  In accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Defendant's motion [Doc. 27] for summary judgment.

Plaintiff Temekia Armour, who is African-American, graduated from high school in 1992.  [Defendant's Statement of Material Facts ("DSMF") ¶ 15].  Plaintiff attended DeKalb Technical College ("DeKalb Tech") for several years, but she did not receive a degree or certificate of any type from that school.  [DSMF ¶ 16].  Plaintiff did not receive any degree or enroll in any education program after her high school graduation and incomplete studies at DeKalb Tech.  [DSMF ¶ 17].

Plaintiff was employed with DeKalb County as a Permit Technician from December 2010 until the spring of 2015.  [DSMF ¶ 18].  When Plaintiff was asked to describe her job duties as a Permit Technician with DeKalb County, she testified: "I would intake permits from the customers coming in to get permits; electrical permits, building permits, plumbing permits.  We would actually – I would actually enter them in the system and then rate the permit for the particular customers."  [Plaintiff's Deposition ("Pla. Dep.") at 9].  Plaintiff was asked and testified to the following:

> Q.   But were you the person who was at the front desk when somebody came in to seek a building permit?
> A.   Yes, exactly.

3

> Q.   And you would take that relevant information and input it into the county system?
>
> A.   That's correct.
>
> Q.   Did you have any responsibilities for determining whether the permit should be issued or not?
>
> A.   Not – I would enter the permit in the system.  I didn't determine if it was going to be issued or not.

[Pla. Dep. at 9-10].  If the applicant was seeking a permit for a residential repair, Plaintiff was able to generate the permit at the time.  [DSMF ¶ 20].  Anything grander in scale, such as new residential or commercial projects of any kind, required higher-level zoning and site review, so Plaintiff simply processed those applications. [DSMF ¶ 21].  Plaintiff had no involvement in reviewing zoning codes or rulings. [DSMF ¶ 22; Pla. Dep. at 16-17].  In her work with DeKalb County, Plaintiff did not work with other municipalities.  [DSMF ¶ 23; Pla. Dep. at 17].

Defendant Century Communities, Inc. ("Century") is a residential homebuilder with many concurrent projects in multiple Georgia counties.  [DSMF ¶ 1].  In November of 2014, Century acquired the assets of another homebuilding company, Peachtree Communities, LLC ("Peachtree").  [DSMF ¶ 2].  Defendant Century's Georgia office relies upon one Permit Coordinator to monitor all the projects and ensure each is progressing through the permit process as necessary.  [DSMF ¶ 3].  The Permit Coordinator is in charge of tracking and overseeing the permit process for all

4

Century's Georgia projects. [DSMF ¶ 4]. The Permit Coordinator is vital in ensuring that the permit process for each project progresses smoothly. [DSMF ¶ 5]. The position requires a certain level of organization, critical thinking, and the ability to multi-task. The Permit Coordinator must be able to juggle multiple projects and be able to organize and coordinate all the documentation and monitor the status of each ongoing project. [DSMF ¶ 6]. The Permit Coordinator's responsibilities include ensuring that the plans for each project reach the correct government office and monitoring the progress and status of permit runners, variance applications, and permit approvals. [DSMF ¶ 7].

The Permit Coordinator must work with surveyors and engineers to gather the proper documentation and ensure that approved permits are sent to the right project. [DSMF ¶ 8]. The Permit Coordinator is also required to interact with many different departments and parties, both within and outside of Century. [DSMF ¶ 9]. The job description for the Permit Coordinator position states, *inter alia*: "Computer skills as required: Word, Excel, and Outlook experience." [DSMF ¶ 10; Plaintiff's Response ("Pla. Resp.") to DSMF ¶ 10; Doc. 31, Ex. 13].

Beth Fowler, who is Caucasian, testified that she held the Permit Coordinator position at Peachtree from 2008 and then at Defendant Century through early 2015,

when she made a lateral transfer to the land department.  [DSMF ¶ 11; Fowler Declaration ("Dec.") ¶¶ 3-4, 13; Plaintiff's Statement of Material Facts ("PSMF") ¶ 8].  Ms. Fowler obtained the position after the prior Permit Coordinator was laid off during the recession.  [DSMF ¶ 12].  Due to the prior Permit Coordinator's sudden departure, Ms. Fowler was provided no training when she took the position and had to build it from the ground up.  [DSMF ¶ 13; PSMF ¶ 12].  At all times relevant to this suit, Mike Stone was the Director of Purchasing or the Vice President of Purchasing and supervised the Permit Coordinator.  [DSMF ¶ 14; PSMF ¶ 9].

Defendant Century's Permit Coordinator position came open in spring 2015 due to Ms. Fowler's transfer.  [DSMF ¶ 24; Fowler Dec. ¶ 13].  Plaintiff Armour applied for the Permit Coordinator position online.  [DSMF ¶ 25].  Mr. Stone then contacted Plaintiff by phone and set up an in-person interview.  [PSMF ¶ 3; Pla. Dep. at 33-34].  Mr. Stone conducted an in-person interview with Plaintiff on March 2, 2015.  [PSMF ¶ 5; DSMF ¶ 26; Pla. Dep. at 34].  Afterwards, Mr. Stone made the decision to hire Plaintiff and offered her the position of Permit Coordinator on March 10.  [DSMF ¶¶ 26, 27; PSMF ¶¶ 1, 6; Pla. Dep. at 34].  Plaintiff was offered an annual salary of $40,000 and was an at-will employee.  [DSMF ¶ 28; Pla. Resp. to DSMF ¶ 28; PSMF ¶ 7].  Mr. Stone told Plaintiff that as Permit Coordinator there were "flex hours" and

6

that she could choose her schedule.  [PSMF ¶ 13].  Mr. Stone allowed Plaintiff to work from 6:30 a.m. to 3:30 p.m.  [PSMF ¶ 14].

Defendant Century subsequently sent Plaintiff employment documents for completion.  Sometime between March 6 and March 23, Plaintiff submitted the completed paperwork to Century.  [PSMF ¶ 4; Pla. Dep. at 42-43].  Plaintiff began working for the company on March 23, 2015.  [DSMF ¶¶ 27, 30; PSMF ¶ 1].  On that day, Ms. Fowler gave Plaintiff a general orientation and then Plaintiff shadowed Ms. Fowler.  [DSMF ¶ 31].

During the first three days of Plaintiff Armour's employment with Defendant Century, Ms. Fowler introduced Plaintiff to individuals with whom the Permit Coordinator worked, including land surveyors and permit runners.  [DSMF ¶ 32; Pla. Dep. at 46-47; PSMF ¶¶ 16, 17].  Ms. Fowler also showed Plaintiff the process that the Permit Coordinator had to follow.  [DSMF ¶ 33; Pla. Dep. at 48].  During this time, Ms. Fowler was still performing the duties as Permit Coordinator.  [PSMF ¶ 18].  After the first three days of Plaintiff's employment, Ms. Fowler had Plaintiff file a stack of backlogged permits and input the data into an Excel spreadsheet.  [PSMF ¶ 19; Pla. Dep. at 51-52].  Plaintiff testified: "I asked [Ms. Fowler] about my performance on the third day – the fourth day of . . . my employment.  I asked her how I was doing, and

7

she stated that I was doing great." [Pla. Dep. at 90]. During Plaintiff's employment with Century, Ms. Fowler continued to perform the duties of Permit Coordinator. Plaintiff had no contact with permit runners and land surveyors other than a general introduction. [PSMF ¶¶ 20, 21].

Ms. Fowler and Mr. Stone testified that in a short period of time, it became evident to them that Plaintiff could not meet the demands of the Permit Coordinator position. [Stone Dec. ¶ 19; Fowler Dec. ¶ 15]. Ms. Fowler and Mr. Stone testified that even after Plaintiff received multiple explanations, she was still unable to perform tasks alone. [DSMF ¶ 39; Stone Dec. ¶ 20; Fowler Dec. ¶ 16]. Ms. Fowler and Mr. Stone also testified that Plaintiff did not seem to understand the requirements of the position or the details of the processes. [Fowler Dec. ¶ 17; Stone Dec. ¶ 21]. Ms. Fowler testified that Plaintiff "could not or would not follow up with permit runners on the status of projects or site plan progress" and that she "did not know how and appeared unable to learn to perform the requisite tasks in Microsoft Excel." [Fowler Dec. ¶¶ 17, 18].

On April 1, 2015, Mr. Stone terminated Plaintiff's employment. [DSMF ¶ 41]. Mr. Stone was the person who made the decision to terminate Plaintiff's employment. [PSMF ¶ 27; Stone Dec. ¶ 26]. When Mr. Stone met with Plaintiff to inform her that

AO 72A

(Rev.8/82)

she was being terminated, he told her, "Sometimes you don't know how a person is going to work until they appear." [PSMF ¶ 28]. Mr. Stone also told Plaintiff that he would give her a good reference. [PSMF ¶ 31]. Plaintiff worked for Defendant Century for only eight days. [PSMF ¶¶ 23, 24; DSMF ¶ 47]. Plaintiff testified that during her employment with Defendant Century, she arrived to work on time and was never disciplined. [PSMF ¶¶ 25, 26; Pla. Dep. at 62].

On April 10, 2015, nine days after Plaintiff's termination, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). [DSMF ¶ 54; Pla. Dep. at 78, Ex. 1]. Plaintiff alleged in the EEOC charge that she had been subjected to discrimination based on race and wrote, *inter alia*, the following: "I was hired by the above named employer on March 23, 2015, as a Permit Coordinator. On or about April 1, 2015, I was discharged. Mike Stone, Director of Purchasing, stated the reason for my discharge was due to performance." [Pla. Dep. at 78, Ex. 1].

On or around April 13, 2015, Defendant Century hired K.C. Krzic, a white woman, to replace Plaintiff Armour as Permit Coordinator. [PSMF ¶ 32; DSMF ¶ 48]. Defendant Century paid Ms. Krzic an annual salary of $55,000, which was $15,000 more than the salary that was paid to Plaintiff. [PSMF ¶ 33]. Ms. Krzic has a bachelor's degree in planning and development and a master's degree in urban

9

planning.  [DSMF ¶ 49; Fowler Dec., Ex. C].  Ms. Krzic's resume reveals that she was employed with Clayton County as a Planning and Zoning Administrator who created, administered, and interpreted zoning, planning, and permitting laws.  [DSMF ¶ 50; Fowler Dec., Ex. C].  Ms. Krzic's resume also indicates that she coordinated between multiple departments within Clayton County and across other state and local agencies and that she has prior experience with project master planning and development, permitting on behalf of developers, and government policy development.  [DSMF ¶¶ 51, 52; Fowler Dec., Ex. C].  Ms. Krzic provided references to Mr. Stone, and he contacted those references in advance of hiring Ms. Krzic.  [DSMF ¶ 53; Stone Dec. ¶ 30].  Before March 31, 2015, Mr. Stone held a phone conversation with Ms. Krzic regarding the Permit Coordinator position.  [PSMF ¶ 34].

Additional facts will be set forth as necessary during the discussion of Plaintiff's claims.

## III.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (amended 2010).  Rule 56(a) "mandates the entry of summary judgment, after adequate

10

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one. See Celotex, 106 S. Ct. at 2553. The movant is not required to negate his opponent's claim. See id. Rather, the movant may discharge this burden merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). Instead, "the nonmoving party

11

AO 72A
(Rev.8/82)

must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." <u>Fickling v. United States</u>, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990)).

The court will apply these standards in ruling on Defendant's motion [Doc. 27] for summary judgment.

## IV.   Discussion

Plaintiff Temekia Armour alleges that Defendant Century terminated her on the basis of her race and color in violation of Title VII and 42 U.S.C. § 1981.  [Doc. 1, Counts I, II].  Plaintiff Armour seeks to use § 1981 as a parallel basis for relief with her Title VII claim. [Doc. 1].  The elements required to establish a § 1981 claim mirror those required for a Title VII claim.  As the Eleventh Circuit has noted, "Both of these statutes have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." <u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998).  This court will do the same.  <u>See</u> <u>Brown v. Alabama Dep't of Transp.</u>, 597 F.3d 1160, 1174 n.6 (11th Cir. 2010) ("The analysis under [§ 1981] claims mirrors that under Title VII."); <u>Springer v. Convergys Customer Mgmt. Group Inc.</u>, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007) (same).

12

In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against her.  See Texas Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1093-95 (1981).  "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof."  Rioux v. City of Atlanta, Georgia, 520 F.3d 1269, 1274 (11th Cir. 2008).  In the present case, Plaintiff relies on circumstantial evidence to support her employment discrimination claim.  The court, therefore, will use the framework articulated in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824-25 (1973), to evaluate her claim.[1]  Under this framework, the allocation of burdens and order of presentation and proof are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of discrimination; (2) if the plaintiff succeeds in

---

[1]"Discrimination claims brought under Title VII . . . are typically categorized as either mixed-motive or single-motive claims."  Quigg v. Thomas County School District, 814 F.3d 1227, 1235 (11th Cir. 2016).  A plaintiff asserting a single-motive or "pretext" claim must show that illegal bias was the true reason for an adverse employment action.  See id.  In contrast, a plaintiff asserting a mixed-motive claim must show that illegal bias "was a motivating factor for an adverse employment action, even though other factors also motivated the action."  Id. (citations and internal quotation marks omitted).  The Eleventh Circuit recently held "that the McDonnell Douglas framework is not applicable to mixed-motive discrimination claims based on circumstantial evidence[.]"  Id. at 1245.  In the present case, Plaintiff does not allege a mixed-motive theory of discrimination and her legal arguments are framed within the McDonnell Douglas burden-shifting scheme as opposed to a mixed-motive framework.  [Doc. 31].  Therefore, the McDonnell Douglas framework applies.

13

proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by defendant was a pretext for discrimination.  See id.

A plaintiff can establish a *prima facie* case of racially discriminatory discharge by showing the following: (1) she is a member of a racially protected class; (2) she was subjected to an adverse job action; (3) she was qualified to do the job; and (4) she was replaced by a person outside her protected class.  See Maynard v. Board of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. University of South Florida, 342 F.3d 1281, 1289 (11th Cir. 2003).  There is no dispute that Plaintiff Armour is able to establish the first, second, and fourth elements.  Plaintiff is African-American, she was terminated from her job as Permit Coordinator on April 1, 2015, and she was replaced by K.C. Krzic, who is white.

With respect to the third *prima facie* element, Defendant argues that Plaintiff was not qualified for the position.  Defendant bases this argument on the opinions of Mike Stone, Plaintiff's supervisor, and Beth Fowler, who trained Plaintiff. [Doc. 27-1 at 11].  The court finds Defendant's argument lacking.  Plaintiff worked at DeKalb

14

County for more than four years as a Permit Technician prior to being hired as a Permit Coordinator by Defendant Century. Moreover, Mr. Stone interviewed Plaintiff and concluded that she was qualified for the job when he made the decision to hire her.[2] In light of these facts, the undersigned concludes that a reasonable jury could find that Plaintiff was qualified for the Permit Coordinator position. See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (noting that Eleventh Circuit "caselaw quite clearly instructs that plaintiffs, who have been discharged from a previously held position, do not need to satisfy the McDonnell Douglas prong requiring proof of qualification") (citation and internal quotation marks omitted); Carter v. Three Springs Residential Treatment, 132 F.3d 635, 643 (11th Cir. 1998).

Because Plaintiff is able to establish a *prima facie* case of racial discrimination, the burden of production shifts to Defendant to articulate some legitimate, nondiscriminatory reason for terminating Plaintiff's employment. See Combs v. Plantation Patterns, 106 F. 3d 1519, 1528 (11th Cir. 1997) (citing McDonnell Douglas,

---

[2]Although Defendant contends that Plaintiff misrepresented her qualifications, this is based solely on the subjective opinion of Mr. Stone. [Doc. 27-1 at 11; Stone Dec. ¶ 25]. A reasonable jury could view the evidence in the light most favorable to Plaintiff and conclude that she accurately represented her qualifications.

93 S. Ct. at 1824; <u>Burdine</u>, 101 S. Ct. at 1094).  "'[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus.'"  <u>Id.</u> (quoting <u>Burdine</u>, 101 S. Ct. at 1096) (emphasis in original).  A "'defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"  <u>Id.</u> (quoting <u>Burdine</u>, 101 S. Ct. at 1094).  The defendant's burden in the rebuttal stage is "'exceedingly light.'"  <u>Walker v. NationsBank of Florida N.A.</u>, 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting <u>Perryman v. Johnson Products Co., Inc.</u>, 698 F.2d 1138, 1142 (11th Cir. 1983)).

Defendant Century alleges that Plaintiff was terminated from her position based on her performance and actions while employed with the company.  Mike Stone was the person who made the decision to terminate the employment of Plaintiff after she had worked for Defendant Century for only eight days.  [PSMF ¶¶ 23, 24, 27; DSMF ¶ 47; Stone Dec. ¶ 26].  Beth Fowler and Mr. Stone testified that shortly after Plaintiff began her employment, it became evident to them that Plaintiff could not meet the demands of the Permit Coordinator position.  [Stone Dec. ¶ 19; Fowler Dec. ¶ 15].  Ms. Fowler and Mr. Stone testified that Plaintiff was unable to perform tasks required for

16

the job alone even after she had received multiple explanations from Ms. Fowler. [DSMF ¶ 39; Stone Dec. ¶ 20; Fowler Dec. ¶ 16]. Ms. Fowler and Mr. Stone also testified that Plaintiff did not seem to understand the requirements of the position or the details of the work processes and that she did not know how and appeared unable to learn to perform the requisite tasks in Microsoft Excel. [Fowler Dec. ¶¶ 17, 18; Stone Dec. ¶¶ 21, 22]. In addition, Ms. Fowler testified that Plaintiff "could not or would not follow up with permit runners on the status of projects or site plan progress." [Fowler Dec. ¶ 17]. The court finds that Defendant Century has clearly satisfied its light burden of producing a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Once a defendant meets its burden of production, "the presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" Combs, 106 F.3d at 1528 (quoting Burdine, 101 S. Ct. at 1094-95 & n.10). The plaintiff then "has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997) (citing McDonnell Douglas, 93 S. Ct. at 1825). "[A] plaintiff may not in all cases merely rest on the laurels of her *prima facie* case in the

17

face of powerful justification evidence offered by the defendant." <u>Grigsby v. Reynolds Metals Co.</u>, 821 F.2d 590, 596 (11th Cir. 1987).  Plaintiff's demonstration of pretext merges with her "ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." <u>Holifield</u>, 115 F.3d at 1565 (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2749 (1993)).  This task is a highly focused one.

The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct[.]'" <u>Combs</u>, 106 F.3d at 1538 (quoting <u>Cooper-Houston v. Southern Ry. Co.</u>, 37 F.3d 603, 605 (11th Cir. 1994)).  Plaintiff may establish pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>McCann v. Tillman</u>, 526 F.3d 1370, 1375-76 (11th Cir. 2008) (citations and internal quotation marks omitted).  "'[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.'"

18

Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (citation omitted).

Plaintiff Armour argues that Defendant's proffered reasons for terminating her employment are pretexts for racial discrimination. [Doc. 31 at 11-17]. Plaintiff contends that pretext can be inferred because Defendant Century has offered shifting explanations and inconsistent reasons for the termination decision. Specifically, Plaintiff contends that "[d]uring the EEOC phase, Defendants announced that the reason for Plaintiff's termination was because: (1) she was eating breakfast at her desk; (2) she was late to work; and (3) the general unsupported accusation of 'performance issues.'" [Doc. 31 at 11]. Plaintiff argues that Defendant Century has "now shifted away from the reasons proffered in [its] EEOC Position Statement" and has offered new reasons in support of its summary judgment motion. [Id.]. According to Plaintiff, "Defendant Century Communities has completely abandoned their originally stated 'reasons.'" [Id. at 11-12]. Plaintiff also argues that contrary to Defendant's assertion in the EEOC position statement, she never ate breakfast at work and arrived to work on time every day. [Id. at 12-14]. For a number of reasons, the court finds that Plaintiff has failed to offer evidence which casts sufficient doubt on Defendant's proffered reasons to permit a reasonable jury to find pretext.

19

In the position statement submitted to the EEOC, Defendant Century offered numerous reasons for terminating Plaintiff's employment.   [Doc. 31, Ex. 9]. Defendant wrote the following in the narrative portion of the position statement:

> Another employee who had been performing the Permit Coordinator duties trained [Plaintiff] with respect to the Company's requirements for the Permit Coordinator position, including the permit process and the steps necessary to obtain, track, and deliver permits.  [Plaintiff] was also trained in how to use and maintain the permit status spreadsheet.  Despite this training, [Plaintiff] proved unable to meet the demands of the Permit Coordinator position.   Specifically, [Plaintiff] did not or could not adequately track permits, oversee runners involved in procuring permits, or ensure delivery of obtained permits.  [Plaintiff] further did not or could not use the spreadsheet created to track permit progress.

[Doc. 31, Ex. 9 at 2].   Defendant Century's explanation in this EEOC position statement is not inconsistent with the company's legitimate, nondiscriminatory reasons presented to the court in support of the summary judgment motion.  As previously noted, Defendant asserts that Plaintiff was terminated because her supervisors found that she was unable to perform tasks required for the Permit Coordinator job alone even after she had received multiple explanations, that she did not seem to understand the requirements of the position or the details of the work processes, that she "could not or would not follow up with permit runners on the status of projects or site plan progress," and that she did not know how and appeared unable to learn to perform the

20

requisite tasks in Microsoft Excel.  [Stone Dec. ¶¶ 20-22; Fowler Dec. ¶¶ 16-18].

Plaintiff's performance was also the reason articulated by Defendant to Plaintiff on the

day she was terminated.  As Plaintiff acknowledged in her EEOC charge, "Mike Stone,

Director of Purchasing, stated the reason for my discharge was due to performance."

[Pla. Dep. at 78, Ex. 1].  Contrary to Plaintiff's current argument, Defendant Century

has consistently asserted that Plaintiff was terminated because of her performance.

The company has not "shifted away" from this assertion in any way.

     In addition to Plaintiff's performance, Defendant stated in the EEOC position

statement that Plaintiff "showed disregard for the Company's policies and procedures"

when she allegedly "did not arrive when requested and further insisted upon eating

breakfast before she would begin work." [Doc. 31, Ex. 9 at 2].  Because Defendant did

not cite this reason in support of its summary judgment motion, Plaintiff argues that

Defendant has offered shifting explanations for its actions.  This is unpersuasive.

     As discussed *supra*, under the McDonnell Douglas framework, the defendant

has the burden of presenting a legitimate, nondiscriminatory reason for taking an

adverse employment action against the plaintiff, and the plaintiff is given the

opportunity to rebut any proffered reason.  But the defendant is not required to present

to the court every reason that was taken into account when the disputed employment

21

decision was made.[3]  In the present case, Defendant Century has consistently asserted that Plaintiff's inability to perform the tasks of the Permit Coordinator position was a significant reason for terminating Plaintiff's employment. [Doc. 31, Ex. 9].  Mr. Stone informed Plaintiff on the day of her termination that she was being fired because of her performance, and Defendant Century made the same assertion to both the EEOC and the court.   There is nothing inconsistent or shifting about Defendant's proffered explanation.

Plaintiff also argues that she is able to establish pretext because Ms. Fowler did not let Plaintiff actually perform the Permit Coordinator job during the short time that she was employed with Century.  [Doc. 31 at 14-15].  Plaintiff testified that she was not assigned the duty to oversee permit runners and that she did not have contact with land surveyors or permit runners after being given a general introduction during the first three days of her employment.  [Pla. Dep. at 46-52; Pla. Dec. ¶ 4].  According to Plaintiff, she was not charged with the duty to track permits or ensure their delivery. [Pla. Dec. ¶ 4].  Plaintiff testified that Ms. Fowler trained her on tracking permits and

---

[3]The court notes that at her deposition, Plaintiff denied that she was ever tardy or that she ever ate at her desk.  [Pla. Dep. at 61-62].  Given this fact, and because the court must view the evidence in the light most favorable to Plaintiff, it is understandable that Defendant would not bother to mention these alleged actions.

performing other duties but that Ms. Fowler was still performing the work of Permit Coordinator the entire eight days that Plaintiff worked at Century.  [Id.].  Plaintiff allegedly was not given the responsibility of the Permit Coordinator job but was merely assigned the task of filing the permits and entering the relevant data into an Excel spreadsheet.  [Id.].

It is clear from Plaintiff's testimony that she believed that Ms. Fowler should have let her perform more duties of the Permit Coordinator job on her own.  Plaintiff asserts that "Ms. Fowler never let the position go" while she was training Plaintiff and that Ms. Fowler only allowed Plaintiff to shadow her.  [Pla. Dec. ¶ 4].  The deficiency in Plaintiff's argument on this issue is that her beliefs about her own job performance during training and her opinion about how much responsibility Ms. Fowler should have given her are not relevant to the pretext inquiry.  "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) (citations omitted).  The relevant issue is not whether the employment decision was wise or fair but whether Mr. Stone, the decisionmaker, gave an honest explanation when he stated that he terminated Plaintiff's employment because he determined that Plaintiff was unable to

23

perform the duties required for the Permit Coordinator job and that she would not be able to meet the demands of the position without Ms. Fowler's oversight. [Stone Dec. ¶¶ 19-23]. Plaintiff's opinions about her performance and whether she was given adequate job opportunities are not germane. See Alvarez, 610 F.3d at 1266 (holding that courts "'must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees'") (quoting Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002)).

Plaintiff also contends that although Ms. Fowler claimed that Plaintiff would not follow up with permit runners, this duty was never given to her. [Pla. Dec. ¶ 4; Fowler Dec. ¶ 17]. Plaintiff's argument again misses the mark. Even if Plaintiff is correct that Ms. Fowler did not assign her the duty of following up with permit runners, this fact would not permit a reasonable jury to find that Mr. Stone, the decisionmaker, failed to give an honest explanation for his decision to terminate Plaintiff's employment. "The pretext inquiry focuses on the honesty of the employer's explanation; raising a question about the correctness of the facts underlying that explanation without impugning the employer's honest belief, fails to create a triable pretext issue." Dawson v. Henry County Police Dep't, 238 Fed. Appx. 545, 549 (11th Cir. 2007). In summary, Defendant Century asserts that Plaintiff was terminated because Mr. Stone

24

believed that Plaintiff was unable to perform the requisite tasks of the Permit Coordinator job and Plaintiff has failed to offer evidence which casts doubt on this assertion.

Plaintiff also argues pretext based on the fact that Defendant never disciplined her and because Ms. Fowler allegedly told her on one occasion that she was "doing great." [Doc. 31 at 15-16; Pla. Dep. at 32, 82, 90]. In addition, Plaintiff cites to the following statement allegedly made by Mr. Stone when he informed Plaintiff that she was being terminated: "[S]ometimes . . . you don't know how a person is going to work until they appear." [Pla. Dep. at 32-33]. The court finds that this evidence fails to create an inference of pretext.

As Defendant Century points out, the company's employee manual provides that the first six months of an employee's tenure is considered an "introductory period" during which the company can "assess the employee's ability to perform assigned tasks and determine whether continuation of the employment relationship is in the best interests of both parties." [Fowler Dec., Ex D at 1-2]. The fact that Plaintiff was not disciplined during her eight-day "introductory period" of employment is of no consequence with regard to pretext. The same is true for Ms. Fowler's alleged statement to Plaintiff that she was "doing great." Plaintiff's own argument is that the

comment was made in reference to her performance of "the menial task of filing Fowler's backlogged permits and entering the date in the Excel spreadsheet." [Doc. 31 at 8-9]. Ms. Fowler's actions in allegedly telling Plaintiff that she was "doing great" in performing a menial task does not cast doubt on Defendant's proffered explanation that Plaintiff was terminated because Mr. Stone believed that she could not adequately perform the duties required of the Permit Coordinator.

The court also finds that Mr. Stone's alleged statement fails to establish pretext. As noted *supra*, Plaintiff claims that during the termination meeting, Mr. Stone said to her, "[S]ometimes . . . you don't know how a person is going to work until they appear." [Pla. Dep. at 32-33]. Although unclear, it appears that Plaintiff is arguing that this statement reveals that Mr. Stone was motivated by racial animus.[4] If this is what Plaintiff is arguing, it is unpersuasive. Plaintiff applied for the Permit Coordinator position online, and Mr. Stone subsequently contacted Plaintiff by phone and set up an in-person interview. [PSMF ¶ 3; DSMF ¶ 25; Pla. Dep. at 33-34]. Mr. Stone conducted an in-person interview with Plaintiff on March 2, 2015. [PSMF ¶ 5; DSMF ¶ 26; Pla. Dep. at 34]. Mr. Stone made the decision to hire Plaintiff and offered

_____

[4]Plaintiff testified that no one at Defendant Century ever made a comment about her race. [Pla. Dep. at 35].

26

her the Permit Coordinator job on March 10.  [DSMF ¶¶ 26, 27; PSMF ¶¶ 1, 6; Pla. Dep. at 34].  Plaintiff began working for Century on March 23, 2015, and on April 1, 2015, Mr. Stone terminated Plaintiff's employment.  [DSMF ¶¶ 27, 30, 41; PSMF ¶ 1].  Plaintiff has offered no evidence that Mr. Stone's termination decision was in any way motivated by racial animus.  As Defendant argues, in light these facts, "it belies reason to think that Mr. Stone, who conducted an in-person interview with Plaintiff, would suddenly fire her on the basis of race after a mere eight days of work."  [Doc. 27-1 at 12-13 (citation and internal quotation marks omitted)].

In summary, the court finds that Plaintiff has failed to point to evidence which would permit a reasonable factfinder to conclude that Defendant's explanations for terminating Plaintiff's employment are "'unworthy of credence.'"  <u>Jackson v. State of Alabama State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting <u>Burdine</u>, 101 S. Ct. at 1095).  "By failing to rebut each of the legitimate, nondiscriminatory reasons of [Defendant], [Plaintiff] has failed to raise a genuine issue of material fact about whether those reasons were pretext for discrimination." <u>Crawford v. City of Fairburn, Georgia</u>, 482 F.3d 1305, 1309 (11th Cir. 2007).  The undersigned, therefore, finds that summary judgment is warranted on Plaintiff's Title VII and § 1981 claims for racially discriminatory termination.

27

## V.     Conclusion

Based on the foregoing reasons and cited authority, it is **RECOMMENDED** that Defendant's summary judgment motion [Doc. 27] be **GRANTED** on Plaintiff Armour's claims [Doc. 1, Counts I, II] against Defendant Century and that these claims be **DISMISSED WITH PREJUDICE**.   It is further **RECOMMENDED** that Plaintiff's claims against individual Defendant Michael Stone be **DISMISSED WITH PREJUDICE** based on Plaintiff's abandonment of such claims.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED**, this 10th day of January, 2018.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

28